A brief announcement. It was discovered after counsel had arrived and pointed out to us that we had a conflict that was not apparent to us immediately on the records that we check for conflicts. And so what we have decided to do is to hear the argument of the first case, our appreciation and thanks to counsel for calling this conflict to our attention now rather than later. Judge Lori and I will hear the argument. If we are in complete agreement as to everything, that will, I think, resolve the issue. If for any reason it looks as if we should proceed again, I trust you will bear with us. It may be appropriate to have an additional argument rescheduled. If so, we will try and schedule it promptly and efficiently, but with the convenience for everyone involved. So let us proceed then with the first argued case, number 161015, Impulse Technology v. Microsoft Corporation. Mr. Rosenthal. Good morning, Your Honors. May it please the Court. My name is Brian Rosenthal. I want to just take one moment for background before I get into the argument. And the background is that accused products in this case are video games that work with a system by Microsoft called the Microsoft Kinect. Rather than using a joystick to control whatever is happening on the screen, there is a camera and the player moves within a particular area and there is a picture, an avatar on the screen that does exactly what you are doing. We have put a picture of this on page 17 of our brief and what you see is an avatar of yourself. If you move to the left, the avatar moves to the left. If you go to the right, the avatar moves to the right. The same thing is shown in the patent. It is the same concept. When you move, your avatar moves. The way that these games work is different manufacturers like Microsoft and Electronic Spy and that game has its own parameters like how big is the space that you are allowed to play within. Some games require a big space. Some games require a small space, different sizes and shapes. The CD specifies all of that when it leaves the shop. So that is the background. The errors that the Court made in this case, in our view, principally and start with, claim construction. They are really both claim construction errors. I want to start with the first error and that is that the Court improperly read into the word defined physical space, a limitation that you have to define that space before you even turn the system on. That is a limitation that is found nowhere in the claims. The District Court agrees that it is not in the claims on A-70. It is not in the specification. I want to start with the claims though because the claims really tell you why you need a defined physical space. If we look at Claim 1, Claim 1 is on A-164 if you wanted to follow along, but basically what Claim 1 says is that you continuously track an overall position of a player in a defined physical space and then in real time you translate that position into a corresponding position of the virtual player in the virtual space. But what you're asking us to do is to construe the claim more broadly than how the invention is described in the specification and as you know that those are not simple concepts. It's equally feasible to invalidate a claim by construing it more broadly than the specification. So there is a powerful purpose of that description. There was a lot, a fair amount, sufficient amount of prior art in this area as well despite having been more perhaps of a pioneer and so do tell us why this claim should be construed more broadly than the way the inventors described it. Certainly. So the premise is something that we disagree with. We are not at all asking for this term to be more broadly than how the invention is described and that's a very important point. Okay. It is absolutely true that if the invention is described narrowly, the claims ought to be construed narrowly. Yes. No problem. But in this case the invention is never described in those narrow terms nor, there is a lot of prior art, but nor was the prior art ever distinguished on anything having to do with the defined physical space. But you've got a precise claim that talks about physical space. Yes. And the space is physical. There's no question about that. When I play The Connect, I can play it here. I can play it in my living room. I can play it outside. When I'm playing it, it's physical. When you look at the trial court found that it was the opposite of physical space. The trial court was wrong. It's absolutely physical space. When I'm playing this game, and this is why I wanted to focus on the claims, the claims talk about tracking a physical location of a player in the defined physical space. The defined physical space must be physical at the time the player is playing it. At the time that I'm playing The Connect, it's absolutely physical. You can't play The Connect in some abstract way. You physically have to be in front of the camera. It's physically tracking where I am by using a camera. As I move around in my living room, it's physically determining where I am and then translating that into a virtual location, which my player will then move. That's absolutely physical. Now, the reason that the district court got the claim construction wrong is two things. First, the district court totally ignored this court's precedent that there's only two ways you can limit a claim to what's in the specification. You can either limit it because there's lexicography, there's a definition, or there's disavowal. In both of those cases, there has to be clear intent. In lexicography, there has to be a definition, explicit or implicit, but a definition. With disavowal, you've got to have a clear disclaimer or distinction or my invention is this or it's important. Now, I want to look at the specification because none of that's there. When we look at the specification on column 9, that's everything you need to know is on column 9 in this particular case. Maybe column 10 a little bit, but it's mostly on column 9. You mean the patent consists of 30-something columns and column 9 tells us all we need to know? Luckily for this appeal, for this issue, everything you need to know is on column 9. There's a lot of good stuff in the patent, but this is all you need to look at for this particular issue. A-150. Let's start from the top. Line 8. This specification tells us exactly what is a defined physical space. A defined physical space may be any available area, indoors or outdoors, sufficient size to allow the player to undertake the movements that are necessary. That's the first thing it says, which is, by the way, exactly where our proposed definition below came from. That's what it says a defined physical space is. It then says on line 15, it will be appreciated that the system may be adaptable to physical spaces of various sizes. When you have the system in place, you can adapt it. You can say, okay, for this game, I want to have an 8x8 area. Okay, for another game, I want to have a 20x20 area because it's a game with multiple players. By the way, that's exactly how the commercial embodiment works. If you look at A2473, we've got a brochure of our device. It's exactly how it works. You set it up, and then you can have a game with a small size, a game with a large size. It's all done after you place the sensor. But you also have issues of the detailed description and enablement and all the rest of it, along with whatever breadth of description there may be in the specification. Absolutely. But what I've just described, I'm reading from the specification, it absolutely describes how to have a system where the physical space can change, even for a given system. I've the very next paragraph, line 18, tells you you can bring this system to all kinds of different places. You can bring it to a football field, a basketball court, a gym, anywhere where there's enough size to play. But it doesn't tell you how to do it. It says that you can do it, or that someone might figure out a way of doing it. Well, that's a question for another day. The question of whether or not the claims are enabled is not an issue in this case. We believe that this is not rocket science. This is quite easy to do and very known. In fact, when you look at the specification down below... When claim construction is construing the claim in light of the specification, which includes all of the requirements for what needs to be provided in order to have the scope covered by the claim. Certainly true. On the other hand, the inquiry is not, is there enough written description and enablement support for the claim once we construe it properly? The inquiry starts with, according to Thorner and Hill-Rom and all the decisions that we cited in that regard in our cases, the inquiry is, what is the right meaning of the claims in view of the specification? Now, there's a second inquiry, which is, under that construction, is there sufficient detail in here to allow someone to practice the claims? I always thought that was the same inquiry for claim construction. You construe the claim. That's it. This is what the claim means. This is its scope. If this is what you're practicing, school's out. And that is the right way. But in your description of the analysis, nothing in there was, now, once we've construed this claim, let's do a double check to make sure that it's enabled. That's a separate analysis. Once the claim is construed, then we ask the question, is there enablement? And by the way, the record has no evidence because we haven't reached that stage of the litigation. There's no evidence of whether or not that is enabled or not. Yes, I agree. And as a result, it's not appropriate for this court to say whether or not it's enabled because the record hasn't been developed. That's going to come later in the litigation once the claims are construed. At this moment in time, the question is how to I go back to the premise that this court sets out, which is you can only limit the claims in those two circumstances. Now, the district court relied principally on one passage of one preferred embodiment, and that is at line 30. It's talking about, it starts really up at line 28. But you just told us that everything we need to know is in claim column 9. It still is in column 9, but I'm a little lower in the column. Thankfully, it actually sequentially follows my argument. So I'm just going a little bit further down in the column to line 28. I think I may have said column 28. That might have been the confusion. Sorry about that, Judge. No confusion. Okay. So it's talking about a particular type of sensing system called the dynasite system, and the judge focused on the language at line 30, that there is a mast centered laterally with respect to the defined physical space at a distance sufficiently outside the front boundary to allow the sensors to track the movement. That's really what the district court latched on to over and over and over again, and there are two problems with that. First, it's a preferred embodiment. It goes on to say another suitable tracking system is the MacReflex on line 52, and then it goes on on line 55 and says you can use electromagnetic, acoustic, ultrasonic on column 10. As I mentioned, there's one little thing on column 10. Column 10 says you can use a camera with no beacon. So there's all kinds of different tracking systems, and none of those have any language like what the district court latched on to. But there's a second really serious problem with what the district court did. It misread even that sentence. The sentence that I quoted on line 30 of column 9, he says, well, that tells us that first you define the physical space, and then you place the sensor. That's not what the sentence says. The sentence says it's describing a physical relationship between two things. So imagine if this is the physical space, the podium that I'm standing before, and I'm the mast. Right now I am centered laterally with respect to this podium, and I'm sufficiently outside the front edge of it such that I can see it. What isn't said is which one came first. Was I standing here and did someone move this podium in front of me? Or was the podium here and I came towards it? It doesn't tell me because it doesn't care. The claims don't care. The invention doesn't care whether the defined physical space is set up first and then you put a sensor in or whether you put a sensor in and then you define the physical space. It's absolutely irrelevant to this invention. That's why our commercial embodiment does it exactly the way that we're saying the claim should be construed to cover. Their construction would exclude the way that we practice these claims for years. So, and by the way, it would be an unnatural reading of these claims to even suggest that the way that this works is that somehow it requires a physical space to first be established and then somehow you've got to position the camera just right and align it and calibrate it just so it knows exactly what it's looking at. There's no description of that in here. And that suggests that the right reading of this is that the patent specification simply doesn't care whether or not the defined physical space comes first and then the sensor gets there or the sensor gets there and then you define the physical space. It's irrelevant. And so under this court's precedent, because there's no statements, you know, they cite Symantec and they cite Ultimate Pointer and a couple of other cases that they cite in their briefs. Every single one of those cases has statements in the specification saying it's important to me that this limitation is here or the prior art is different because it doesn't have a pointing device. Those are the sorts of things, you know, in the Symantec case, there's this, I think the language is byte protocol or something like that, and it was limited to machine instructions because the specification said the byte protocol is something that includes machine instructions and it distinguished prior art on that basis. Every single case they cite has that. They have never cited a case, because none exist, where you limit the claims to something when there's no statements in the specification that evidence a clear intent to limit it. It's just not there. We cited a lot of cases, the TomTom case, the Info Hold case, the Epos case, Thorner, Hill-Rom, they have no distinction for those cases. They tried to distinguish two of them and they ignore the rest of them. All of these are cases where the Federal Circuit has said it's not proper unless you have those, that language in the spec or the prosecution history, where you're trying, you're clearly evidencing disavowal. It's not appropriate. I wanted to say just one word on doctrine of equivalence, if I may, before I get into my rebuttal time, and that is we're very confident and believe that we're right about the claim construction, but even under the incorrect claim construction, we submitted a expert report by our expert, and it's at A2510-11. You can take a look at it, but it's not perfunctory. He went through the function, the way, and the result, and he did the right analysis. He said, what's the difference between a system where you define physical space based on where the sensor is versus a defined physical space in the real world that you then put a sensor in? That's the comparison, and he said it's the same function, it's the same result, and he says what those are. He says the way is slightly different because you have to translate the coordinates into a different system, but it has no effect on any of the invention. A jury should have the right to hear that and to make its own decision about whether or not that's the same or not. So that's all I wanted to say here, and I'll save the rest of my time for rebuttal. Okay, you've exhausted your time, and we'll save your rebuttal time. Thank you very much. I want to start with a reset as to what the dispute is as to the scope of this claim term. At the district court, very clearly at the claim construction stage, and again at the summary judgment stage, and at the objections to the summary judgment stage, the dispute was very clearly whether or not you can have a defined physical space that is simply relative to and dependent on the sensor or whether we must have a truly defined physical space independent of the sensor. That was the core question as to claim scope that was decided at claim construction, again at summary judgment, and again at the objections to summary stage. This question of the temporal limitation and the sort of suggestion that, well, whether it's before or after you start the game play, that is a question that came for the first time on appeal and I think really is a distraction from the fundamental question that was before. Let's assume the question is before us. After all, until we had the district court's judgment, we didn't know perhaps that that was the question that needs to be attacked. Well, I'm not sure that's true, Your Honor, because I think it was quite clear at the claim construction stage and the summary judgment stage that was the question. But in any event, that question, the real question, is whether it can be sensor dependent or it needs to be a defined physical space that's independent of the sensor. And I want to start with the claim language because there's been a lot of focus on the specification and rightly so. But the claim language, of course, should be the starting place. And the problem with the construction that's now being promoted by impulse is that it would read out from the claim the concept of the defined physical space. So if you look at the first limitation of claim one of the 565 patent on A164. But they say that the portions of column nine does make these broad statements. Now, as you know, the claims and the breadth of the are entitled to no more than a more narrow construction. But your friend says not in this case. You're right, Your Honor. So I think what I heard my friend saying is first that they believe that the claim language is incredibly broad. Defined physical space is incredibly broad. And then if you look to the spec, there's nothing in the specification that narrows that. I would actually encourage the court to look at the claim language to figure out what defined space means in the context of the claim and in the context of the specification. And there, if they were correct, that a defined physical space could be simply defined in relation to the censor, you would not need the words in a defined physical space in claim one. It simply reads that concept out. What they are arguing is, well, of course, anytime you play a game with the censor, you're in a physical space. You're either going to be indoors, you're going to be outdoors, you're always in a physical space. That's certainly true. That, of course, makes the limitation meaningless. If you look at what the claim limitation says, it says that you're tracking the overall physical limitation of a player, so it's the physical location of a player, in a defined physical space. That limitation needs to have meaning. And what that claim tells you is that meaning, then when you go to the next step, is to allow that location and movement of the player in the defined physical space to then be correlated to the location and movement of the person in the virtual space. And that's the whole point of this invention. This was back in 1997. The connect was not a glimmer in anyone's eye. What Mr. French was purporting to invent was you have a football field, a basketball court, a tennis court, and he wanted to create a system in which you could have fidelity of movement so that you could put someone through training exercises and allow them to run drills and get better. And what the specification makes very clear is to have that fidelity of movement so that you can have an accurate training system, as described and as claimed. You define the physical space so you know its size, you know its boundaries, and you know within what context the person is moving in physical space. And then you use that position and movement to translate to a virtual world, to the virtual space, so that they can then have the training exercise. And Mr. Rosenthal was very focused on one sentence in column nine, and to be sure that's an important sentence. But I actually think you have to look at the whole specification of the patent. And what the whole specification of the patent makes very clear, right from the outset, right from the field of the invention throughout, is that the point of the invention is to track and determine player position during movement in a defined physical space. That's at column one. And it goes on to say that you put this person through skills training based on time and distance traveled in the defined physical space. At column eight, the patent goes on to explain, and this is at column eight, line around 22, where it talks about the tracking and display system. It goes on again to talk about how the purpose of this is to put a player through agility skills, where you're looking at them in the three-dimensionally defined physical space in which the player moves. And again and again throughout column eight, again throughout column nine through 10, it's about the physical space in which the player moves so that you can track them in that space and then correlate their movement to the virtual space to put them through the drill. And column nine says, by the way, this isn't so strictly limited. I actually don't read column nine that way, Your Honor. So when I read column nine, and I think you have to read all of column nine. Column nine, line eight, which Mr. Rosenthal read from, said, a defined physical space may be any available indoor or outdoor, any available area, indoors or outdoors, of sufficient size to allow the player to undertake the movements for assessing the quantifying distance and time measurements relative to the player's conditioning sports and ability. And then he skipped down a couple of lines and omitted a sentence, which I think is important. The sentence he omitted says a typical physical space may be an indoor facility, such as a basketball or handball court, where about a 20 by 20 area with a 10-foot ceiling clearance can be dedicated for the training and testing. And then it will be appreciated that the system may be adaptable to physical spaces of various sizes. And he says that's the preferred embodiment, but that the claim shouldn't be limited to the preferred embodiment. That's what he says, Your Honor, but it's the only embodiment. And what I was listening for, and I've been listening for it from the claim construction hearing at the district court, in the summary judgment context in the district court, and throughout the appeal briefing and again today, was something, anything that they might be able to point to in the specification that would suggest that the defined physical space can be a non-physical abstract space that's defined only in relation to the sensor. They have not been able to point to anything close to that because there's no disclosure of that whatsoever. The only thing that the patent discloses quite clearly is that you have to have a defined physical space that's independent of the sensor. Then you set up the sensor, track the person in that physical space, and then allow their movement to be correlated to the virtual space. And I think an example might be helpful here. Let's take, for example, a tennis court. If you're on a tennis court, you set out the tennis court, everyone knows what the boundaries are, you know where the net is. According to once you have your tennis court, you know what the defined physical space is. It's a defined physical space that exists in the real world independent of the sensor. You can set up a sensing system, allow the person to move within that physical space, and then track them and put them through drills. What that system would allow you to do is know, for example, when the player is approaching the net. Know when the player has stepped out of bounds to the left, to the right, to the side. In Mr. Rosenthal's view of the world, you wouldn't have a defined physical space in which the player moves. Instead, what you would have is simply a sensor. And any time the person stands within the sensor, they're in this defined physical space. What they are trying to do is collapse the sensor with the defined physical space, which is an independent concept. And I do also point your honors to column 10, to a portion of column 10 that Mr. Rosenthal didn't point to in this discussion. And that is the patent itself distinguishes the concept of the defined physical space from the sensor area or the tracking volume. And that's a column 10, line 29 through 34. In that sentence, to be sure, it does say in a particular embodiment. But my point here is in that context, when the patent is talking about the defined physical space, it uses the words defined physical space as it does throughout the specification and the claims. But when it's talking about the sensor area, it uses a different term for that tracking volume. That's a different concept. They are now attempting to take defined physical space out of the claims and instead substitute it with this concept of tracking volume. And that's inconsistent with the claims. Because if you did that, you just wouldn't need to say tracking the physical location in a defined physical space. That limitation has to have meaning. And the district court correctly found, after looking at not just one sentence in column 9, but if you look at the district court's opinion, it thoroughly analyzed column 8, column 9, and column 10. It correctly found that in that context, the defined physical space is a space that's a physical space that's defined independent of the sensor and not simply a subset of the tracking volume of the sensor. There's one other point I'd like to respond to, which is the legal framework within which we're operating. There's been a suggestion by Mr. Rosenthal that the only way in which somebody can depart from the plain and ordinary meaning of the claim is if there's an explicit disavowal or disclaimer. And I think the problem with that proposition is it is completely a field from the facts of this particular case. I understand why Mr. Rosenthal would like that for that to be the law and why he would like for that to apply here. It doesn't apply here for two reasons. First, there is no plain and ordinary meaning of this term. No one has proposed a plain and ordinary meaning of defined physical space. That was not their construction below. It's not their construction now. So the idea that we should start with some generalized plain and ordinary meaning and then look for a disclaimer is inapplicable here. The second reason it doesn't work, of course, is that the plain and ordinary meaning has to be looked at in the context of the patent. Both sides agreed at the district court that the specification was the best evidence on the meaning of the defined physical space. That was the evidence both sides pointed the district court judge to. He looked at that evidence. He looked at column 8, 9, 10, the whole patent altogether and found that the meaning of the term, while it might not be plain from just the words defined physical space, in the context of the patent is plain and is that it has to be a space that is physical and that is defined and not simply dependent on the censor. So for those two reasons, I think all of that argument is a court. And of course, I also think in view of semantics and in Phillips, which is, of course, this court's en banc ruling, the suggestion that you have to have a clear disavowal is itself, I think, not a correct statement of law. But I don't think you need to get there in this case because we're not dealing with a situation where an expert said this is the plain meaning and somehow the district court departed from that. That is not this case. There was no expert evidence of plain meaning. There was no suggestion from impulses to what the plain meaning was. Both parties correctly pointed the district court to the specification for guidance on what the claim term means. And the district court correctly analyzed the entirety of the specification and the claim language and made a determination that it simply can't be this concept of what the district called a relational space. A physical space is a physical space. It has to be a defined physical space. A relational or abstract space that is only in the context of and dependent on the censor cannot constitute a defined physical space within the context of this patent. Unless your honors have any further questions, I will see the rest of my time. Okay, good. Thank you, Ms. Bader. Three minutes for rebuttal. Thank you, your honors. I have five very quick points that I might not be able to get through them all, but let me see if I can. First, I didn't understand my friend's first point that this wasn't raised below. On A72, it's the court's recommendation on claim construction. It specifically says defined physical space means a space that is known prior to the adaptation of the testing and training system. That is the issue. It's a temporal issue. Second, she talked about the claims. The claims would be meaningless under our construction. Absolutely not true. I loved her description of what the claims are all about. It's absolutely right. You have to have a defined space. It has to have boundaries. That's what makes it a defined physical space, because you need to be able to know if you're near the edge of the space, I want the avatar to be near the edge of the virtual space. If you don't have boundaries, you can't tell where to put the avatar. If I'm just looking and saying, I'm just looking for movement in my field of view, that doesn't work. We absolutely agree that you have to have a definition. And the definition of that space has to happen before you start playing the game. Absolutely. But not before you even put the sensor up in and turn the machine on. And notably, there was not a single word about why it's important to have somehow a space defined before you put a sensor in. Third, I didn't hear a single case cited where the court has limited a term to the specification without words that say, this is important to my invention, or this is how I'm defining my term. She cited Symantec and Phillips. Those cases don't apply. Symantec, there were specific words that the court relied on saying, this is important to my invention to talk about the machine code. Column nine, this is my fourth point. She talked about the sentence that I did not address, which was the typical physical spaces include a basketball court, a football field, things like that. It's important to look at exactly what is said there. It says, a typical physical space may be an indoor facility such as a basketball or handball court where about a 20 by 20 by 10 space can be dedicated. So what it's saying is bring your There's nothing in there that says, but before you put the sensor in there, you have to mark out exactly where that 20 by 20 space is and then put the camera there and then align everything correctly. It's not in there. So that doesn't help at all, the argument. And the preferred embodiment, she said, there aren't any other preferred embodiments. It says right at the bottom of column nine, 52. Another suitable tracking system is this, 54. Many other suitable tracking systems may be substituted, including X, Y, and Z. Column 10, line 18. It will be appreciated further that one or more cameras or other image capturing devices can be used. There are literally almost 10 different preferred embodiments described for the tracking system. There's lots, and she's drawing from one of them. And the district court, more importantly, drew from one of them, and that's not appropriate. Okay, one final statement. We need to wrap up. Okay, the last point is we are not trying to equate the tracking volume with the physical space. The defined physical space has to be its own concept. It's not just whatever I can see, but it doesn't have to be defined before I put the sensor in place. That's the point. Unless you have any further questions. Okay, any more questions? Thank you very much. Okay, thank you. Thank you both.